SHIVERS, Senior Judge.
Florida Power & Light and Helmsman Management Services, Inc., the Employer/Carrier (E/C) have appealed an order of the judge of compensation claims awarding housekeeping services, payment of past medical bills for thyroid condition and surgery (including repair of vocal cord damage), continuing thyroid treatment, and continuing psychotherapy. We affirm in part and reverse in part.
In September 1990, claimant Azalea Chiri-no injured her head, neck, right shoulder, low back and left knee in a compensable automobile accident. For the next five months, she underwent prescribed traction five times per week for 35 minutes per session; for the succeeding two years, the sessions took place three times per week. The traction treatment ceased in May 1992, when Chirino was diagnosed with hyperthyroidism. Dr. Garcia, an endocrinologist, testified without rebuttal that the thyroid condition was related to the extended course of traction. He based his opinion on blood work immediately prior to the accident which showed no signs of a thyroid condition, as well as on three medical studies relating elevated thyroxin levels to stretching of the thyroid.
In December 1992, Chirino underwent thyroid surgery. Her counsel stated in opening argument that Chirino’s vocal cords were damaged during the surgery, and repaired in August 1993. However, Chirino neither filed a claim for related expenses, nor made such claim orally at the hearing. Further, the record contains no medical or other evidence pertaining to vocal cord damage or surgery.
In March 1992, Pascal (Chirino’s rehabilitation case manager) recommended to the E/C that Chirino receive housekeeping assistance. The E/C authorized such service at a rate of $176.00 per week (16 hours per week at $11.00 per hour). In September 1992, the personnel pool which had been providing *231 housekeepers told Pascal that it could no longer do so due to a labor shortage caused by Hurricane Andrew. Pascal informed the E/C, stating that Chirino desired to hire her own housekeeper. The E/C expressed to Pascal a desire to continue hiring from an agency, but did not inform Chirino that it would not pay a privately-hired housekeeper. Pascal contacted four personnel agencies without success and, with the knowledge of E/C, Chirino hired a maid to work two days per week at $60.00 per day (or $120.00 per week). In November 1992, Chirino filed a claim for housekeeping services, which the E/C denied on December 30, 1992 citing use of an unauthorized provider; a second housekeeping claim filed January 8, 1993 was denied as not medically necessary.
From April 1988 to May 1989, and again from March to June 1991, Chirino consulted a psychologist, Dr. Herrera, for divorce-related problems. On June 3, 1992, Chirino returned to Dr. Herrera suffering from agitation, severe depression, and a deteriorated appearance. Dr. Herrera diagnosed the condition as post-traumatic stress syndrome, and opined that it was related to the compen-sable accident. On July 14,1993, Dr. Diaz, a psychiatrist, performed an independent medical examination at the E/C’s request. After a 45-minute session, Dr. Diaz opined that Chirino had no psychiatric problems related to the compensable accident.
In November 1992, Chirino filed a claim for benefits seeking payment for housekeeping services, and for medical and prescription bills relating to the thyroid condition and surgery. A further housekeeping claim was made on January 8, 1993 and, on April 15, 1993, Chirino claimed payment of past bills from and continued services by Dr. Herrera. At no time did Chirino make a claim regarding August 1993 vocal cord surgery.
After hearings on October 12 and 22,1993, the judge of compensation claims (JCC) entered his order on November 17, 1993. He found that, because the E/C authorized and paid for housekeeping services from March to September 1992, and did not formally deny such services until January 28, 1993, it was estopped to deny payment before that formal notification. The JCC further found that, based on Dr. Garcia’s unrebutted opinion, the thyroid condition was related to the compensable accident. Finally, the JCC adopted Dr. Herrera’s opinion over that of Dr. Diaz as more compatible with the evidence, and found Chirino’s psychological condition causally related to the accident.
As to the vocal cord surgery (no claim for which was made before or during the hearings), the JCC found as fact that the December 1992 thyroid surgery “resulted in a partially severed vocal cord,” as to which “[a] transplant surgical procedure was performed on August 9, 1993.” However, our review of the record reveals no medical testimony or evidence to this effect, other than counsel’s remarks during his opening statement that “part of [Chirino’s] vocal cords were cut” during the thyroid surgery, and that repair surgery had recently been performed. The JCC included “medical care for the attempted repair to Chirino’s vocal cords” in his award of the payment of outstanding bills for the hyperthyroidism condition.
The E/C first argue that there is no competent substantial evidence to support the opinion of Dr. Garcia that Chirino’s hyperthyroidism was related to the traction prescribed for her compensable injuries. However, Dr. Garcia’s opinion was unrebut-ted, as were the medical articles upon which he partially relied and whose relevance the E/C now challenge. Finally, Dr. Garcia did not rely solely on those articles, but also on undisputed evidence that tests immediately prior to the compensable accident showed no signs of a thyroid problem. Under these circumstances, we affirm the JCC’s finding on this issue. We similarly affirm, as supported by competent substantial evidence, the JCC’s finding that Chirino’s psychological condition is causally related to the com-pensable ac.cident.
As for the JCC’s award of housekeeping services through January 28, 1993, the E/C do not dispute the underlying finding of estoppel except to argue that it authorized housekeeping only from an agency; thus, Chirino’s hiring of private help was not “reasonable reliance.” The evidence does not support this argument. It shows rather that, *232 when informed that the personnel agency could no longer supply housekeeping workers, and that Chirino wished to hire private help, the E/C stated that it would prefer to continue hiring through an agency. It did not condition continued payment on use of agency workers. More importantly, although it knew that Chirino had hired a private housekeeper, it did not notify her that such service was not authorized until after a formal claim was filed in late November 1992.
As to the extent of the E/C’s responsibility for payment for housekeeping services, the JCC ruled that it was required to pay for such services until a January 28, 1993 notice of denial. The JCC reasoned that this was the first “formal notification that the service was no longer authorized.” However, Chiri-no sought reimbursement for the maid’s services by claim filed November 24, 1992. By notice of denial filed December 30, 1992, the E/C formally notified Chirino that it was denying the claim based on use of an unauthorized provider. Under the JCC’s “formal notification” rationale, the E/C’s responsibility should cease as of December 30, 1992, not as of January 28, 1993 as found. We therefore affirm the JCC’s ruling that the E/C is responsible for housekeeping services, but direct that the order be amended so that such responsibility ceases on December 30, 1992.
Finally, the E/C argue that the JCC erred in awarding payment for Chirino’s vocal cord surgery when such was never claimed, and no evidence as to it adduced at the hearing. We agree. Due process concerns preclude a ruling on matters which have not been placed at issue, as the parties are entitled to notice so that they may fairly present their case. Florida Power Corp. v. Hamilton, 617 So.2d 333, 334 (Fla. 1st DCA 1993). Therefore, it is usually necessary that a claim identify the specific benefit being requested. Florida Power, 617 So.2d at 334.
Here, the written benefit claims in the record, as well as the pre-trial stipulation, were filed prior to Chirino’s August 1993 vocal cord surgery, and thus do not reflect a claim for associated expenses. Although Chirino’s attorney mentioned in the outset of the October 1993 hearing that Chirino’s vocal cords were “cut” during thyroid surgery necessitating surgical repair, he did not orally amend the claim to seek associated expenses. More importantly, no medical evidence in the form of written surgical records or the surgeon’s testimony indicates that a vocal cord injury actually occurred during the thyroid surgery. Because Chirino made no claim for expenses related to the August 1993 vocal cord surgery, nor was there competent substantial evidence to support an award of those expenses, we reverse the award thereof, without prejudice to the filing of a claim therefor.
Affirmed in part, reversed in part, and remanded with directions.
JOANOS and VAN NORTWICK, JJ., concur.